**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**BEVERLY JO LITTLE,**

      **Plaintiff,**

  v.                                        **Civil Action 2:18-cv-1488
Magistrate Judge Jolson**

**COMMISSIONER OF SOCIAL
SECURITY,**

      **Defendant.**

## OPINION AND ORDER

Plaintiff, Beverly Jo Little, filed this action seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits (DIB) under Title II. The parties in this matter consented to the Undersigned pursuant to 28 U.S.C. § 636(c). (Docs. 12, 14, 15). For the reasons that follow, the Commissioner's nondisability finding is **AFFIRMED**, and this case is **DISMISSED**.

**I. BACKGROUND**

    **A. Prior Proceedings**

Plaintiff filed an application for Disability Insurance Benefits on March 17, 2015 under Title II, alleging disability beginning on March 29, 2013. (Doc. 16, Tr. 143–46). Her application was denied initially and again on reconsideration, and after a hearing held on May 25, 2017 (Doc. 17, Supplemental Transcript 499–534), Administrative Law Judge Jeannine Lesperance (the "ALJ") issued an unfavorable decision. (Doc. 16, Tr. 19–32). The Appeals Council denied Plaintiff's request for review making the ALJ's decision the final decision for purposes of judicial review. (*Id.*, Tr. 8–13).

Plaintiff filed this action on November 19, 2018 (Doc. 1), and the Commissioner filed the administrative record and the supplemental administrative record on May 2, 2019 (Docs. 16, 17). Plaintiff filed a Statement of Specific Errors (Doc. 22), the Commissioner responded (Doc. 24), and no reply was filed.

### B. The ALJ's Decision

The ALJ found that Plaintiff had the following severe impairments: osteoarthritis of the hips, status post remote total hip replacement surgeries; polysubstance abuse; bipolar disorder; an anxiety disorder; and major depressive disorder. (Doc. 16, Tr. 23). The ALJ held, however, that there was no medical opinion of record to indicate the existence of an impairment or combination of impairments that met or equaled in severity the level of the Listings of Impairments. (*Id*., Tr. 24).

As to Plaintiff's RFC, the ALJ found:

> [T]he claimant had the residual functional capacity to perform medium work, as it is defined in 20 CFR 404.1567(c), except that she was able to stoop frequently. She could climb ramps and stairs frequently, she could climb ladders, ropes, and scaffolds occasionally. She could perform simple, routine, and repetitive tasks in a work environment in which changes occur on no more than an occasional basis and in which she would interact no more than occasionally with coworkers or the general public.

(*Id.*, Tr. 26). After consideration of the evidence, however, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not entirely consistent with the medical evidence and the other evidence in the record." (*Id*., Tr. 27).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v.*

*Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

## III.  DISCUSSION

Plaintiff asserts that the ALJ improperly evaluated the opinion evidence of record. (*See generally* Doc. 22). More specifically, Plaintiff questions how the ALJ analyzed the opinions of Dr. Saribalas, her treating physician, and Ms. Frank, her counselor. Relatedly, Plaintiff argues that a consultative examination was necessary to make an RFC determination.

### A.  Dr. Saribalas's Opinion

Two related rules govern how the ALJ was required to analyze Dr. Saribalas's opinion because he was one of Plaintiff's treating physicians. *See Dixon v. Comm'r of Soc. Sec.*, No. 3:14-cv-478, 2016 WL 860695, at *4 (S.D. Ohio Mar. 7, 2016). The first is the "treating physician rule." *Id.* The rule requires an ALJ to "give controlling weight to a treating source's opinion on

the issue(s) of the nature and severity of the claimant's impairment(s) if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 384 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527(c)(2)) (internal quotation marks omitted).

Closely associated is "the good reasons rule," which requires an ALJ always to give "good reasons . . . for the weight given to the claimant's treating source opinion." *Dixon*, 2016 WL 860695, at *4 (quoting *Blakely*, 581 F.3d at 406 (alterations in original)); 20 C.F.R. § 404.1527(c)(2). In order to meet the "good reasons" standard, the ALJ's determination "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Cole*, 661 F.3d at 937. The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied. The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (internal citation and quotation marks omitted). The treating physician rule and the good reasons rule together create what has been referred to as the "two-step analysis created by the Sixth Circuit." *Allums v. Comm'r of Soc. Sec.*, 975 F. Supp. 2d 823, 832 (N.D. Ohio 2013).

Dr. Saribalas began treating Plaintiff in 2008, and, in September 2015, he completed a Mental Impairment Questionnaire regarding Plaintiff's mental condition. (Tr. 391–395). Dr.

4

Saribalas opined that Plaintiff had several marked mental limitations; would miss more than three days of work per month; had a Global Assessment of Functioning (GAF) score of 45; and stated that Plaintiff's "disability" would last more than 12 months. (*Id.*). Plaintiff relies on Dr. Saribalas's opinion to argue that the ALJ underestimated her mental limitations. (Doc. 22 at 9–10).

The ALJ assigned some weight to Dr. Saribalas's opinion:

> I have given some weight to Dr. Saribalas's statements; their author had reportedly been providing treatment for the claimant's psychological problems since 2008, and, in his notes, he did note some abnormalities with regard to her mental status. (See Exhibit B9F). I also note that Dr. Saribalas provided explanations for some of his assertions. Nevertheless, I do not agree with most of his conclusions. During the year and a half prior to October of 2014, he saw the claimant only three times (see Exhibits B1F, B9F), and the findings that he recorded on those occasions do not appear to support the conclusion that the claimant's impairments imposed marked mental limitations that would lead to excessive absenteeism. Furthermore, his statements were rendered approximately a year after the claimant's date last insured, and they contain important internal contradictions: for instance, in describing the claimant's signs and symptoms, he did not mention any problems with respect to her ability to focus or remember things, yet he wrote that her impairments markedly limited her capacity for concentration and persistence. Dr. Saribalas's opinion also seems to be inconsistent with the other evidence in the record. For example, the psychiatrist wrote that the claimant had a very limited ability to maintain socially appropriate behavior or adhere to basic standards of neatness. But, in describing their clinical observations, her examiners do not seem to have noted abnormalities with respect to her grooming or hygiene, and her testimony about her activities—such as her participation in horse shows, volunteer work at the horse barn, and the frequency with which she shops in stores—does not suggest that she has found it especially difficult to behave in a socially appropriate manner.

(Tr. 28–29).

In determining the weight of medical source opinions not entitled to controlling weight, an ALJ must evaluate the following factors: the length, nature, and extent of treatment relationship; evidence in support of the opinion; consistency with the record as a whole; and the physician's

specialization. 20 C.F.R. § 404.1527(c); *see Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010). The ALJ did that here. At base, the ALJ found Dr. Saribalas's opinion to be of lesser value because Dr. Saribalas treated Plaintiff infrequently during the relevant time period; his opined limitations did not match his own evaluations of Plaintiff; and other record evidence showed that Plaintiff's limitations were not that marked. For this last point, the ALJ expressly noted that, although Plaintiff had a dysphoric mood, she was oriented and had no hallucinations, delusions, or loose associations; average intelligence; good eye contact; and fair insight and judgment. (Tr. 303, 305, 309). Similarly, Dr. Saribalas's records fail to show Plaintiff struggling with concentrating or remembering. Given all of this, the ALJ did not err. She adequately explained how she evaluated Dr. Saribalas's opinion, and substantial evidence supports her conclusion.

### B. Ms. Frank's Opinion

Although Defendant seems to apply the treating-physician rule to Ms. Frank's opinion, the Court understands Ms. Frank to be a counselor, not a physician. As such, she is not an "acceptable medical source" pursuant to Social Security Ruling SSR 06-03P; instead she is an "other source." *See* SSR 06-03P (S.S.A.), 2006 SSR LEXIS 4, 2006 WL 2329939[1]; *see also Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011). "Other sources" cannot establish the existence of a medically determinable impairment but "may provide insight into the severity of the impairment and how it affects the individual's ability to function. *Id.* at *2. The ruling notes that "[w]ith the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not 'acceptable medical sources,' such as nurse practitioners . . . have increasingly

---

[1] This regulation has been rescinded. It still applies, however, to claims (like this one) filed before March 27, 2017. 20 CFR § 404.1527.

assumed a greater percentage of the treatment and evaluation functions handled primarily by physicians and psychologists." *Id.* at *3. Such opinions are "important and should be evaluated on key issues such as impairment severity and functional effects, along with the other evidence in the file." *Id.* at *4. Accordingly, the ruling explains that opinions from non-medical sources who have seen the claimant in their professional capacity should be evaluated by using the applicable factors, including how long the source has known the individual, how consistent the opinion is with other evidence, and how well the source explains the opinion. *Id.* at *4–5. Also relevant is whether the source has a specialty or area of expertise related to a claimant's impairment. *McConnal v. Comm'r*, No. 1:14-CV-179, 2015 WL 350586, at *9 (S.D. Ohio Jan. 26, 2015), *report and recommendation adopted*, No. 1:14-CV-179, 2015 WL 728336 (S.D. Ohio Feb. 19, 2015) (citing regulations). Finally, the ruling states that

> [a]lthough there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

SSR 06-03P, 2006 WL 2329939 at *6.

Here, Ms. Frank opined that Plaintiff had several marked mental limitations; would miss more than three days of work per month; and working a full-time job would exacerbate Plaintiff's symptoms and possibly negate any progress to date. (Tr. 399–403). The ALJ analyzed Ms. Frank's opinion in this way:

> I have given some weight to Ms. Frank's opinion. Ms. Frank reported that, on April 10, 2013, she began to provide treatment for the claimant's psychological problems, and the record confirms that, on that date, she did, in fact, perform a diagnostic assessment of the claimant. (See Exhibit B2F). Still, I do not accept Ms. Frank's

7

> conclusions. The record does not contain Ms. Frank's notes about any of her subsequent sessions with the claimant prior to the date last insured, though the claimant has sometimes told other examiners that Ms. Frank has been counseling her. (See Exhibit B4F at 4; Exhibit Bl9F at 55, 83). Moreover, her assertions about the claimant's ability to tolerate the mental demands of full-time work seem to be inconsistent with the claimant's testimony about her ability to live independently, to take care of four ferrets, perform volunteer work, and to go shopping every few days. In one of her statements, Ms. Frank noted that it had been at least five months since the claimant had last used marijuana (see Exhibit Bl 7F at 1), but she did not describe the ways in which the claimant's use of that drug (or of cocaine) had affected her mental functioning. Ms. Frank is not an acceptable medical source, and her statements about the claimant's mental functioning are inconsistent with the conservative character of the treatment that the claimant seems to have received for her psychological problems during most of 2013 and 2014. I did review the bulk of the treatment notes, which are generally after the date last insured in 2016 and 2017 (Bl9F) and note that her findings are generally fairly benign, with some transient distractibility but often normal attention and concentration on mental status exams. Moreover, Ms. Frank does not cite evidence to support that the stress of full time work would cause the claimant to decompensate nor does she explain how the deficits noted in her opinions at Bl6F and Bl 7F are consistent with her full activities of daily living, caring for her horse and ferrets, shopping, traveling, etc.
>
> I have given little weight to Ms. Frank's statement that the claimant had an unlimited ability to interact with the public; the claimant's testimony supports a finding that her impairments continued to impose some limitation in that regard.

(Tr. 29).

The ALJ's analysis of Ms. Frank's opinion is thorough and has evidentiary support. Most critically, the ALJ relied on the record to show that Plaintiff's reported activities did not align with Plaintiff's reported limitations; Plaintiff received relatively conservative treatment during the relevant time period, and Ms. Frank's opinion failed to account for the effects of Plaintiff's drug use on her mental abilities. At base, the ALJ provided sufficient and acceptable reasons for discounting Ms. Frank's opinion. There was no error.

### C. Consultative Examination

Plaintiff additionally argues that the ALJ should have requested a consultative examination instead of using her "lay opinion" to craft the RFC. (Doc. 22 at 10). There is no right to a consultative examination; it is a discretionary choice. *See* 20 C.F.R. 404.1519a(a) ("If we cannot get the information we need from your medical sources, we may decide to purchase a consultative examination."). Accordingly, this Court reviews the ALJ's decision whether to develop the record further for abuse of discretion. *Hayes v. Comm'r of Soc. Sec.*, 357 F. App'x 672, 675 (6th Cir. 2009).

The Court concludes that the ALJ did not abuse her discretion. As discussed above, the record contain sufficient evidence to make a disability determination. (*See generally* Tr. 247–498). Further, Plaintiff did not request a consultative examination before, during, or after her hearing. (Tr. 501–534). Additionally, the RFC determination is an issue reserved to the ALJ. 20 C.F.R. § 404.1546(c). And, because a residual functional capacity assessment is not a medical assessment, the ALJ did not need a doctor's opinion regarding Plaintiff's functional limitations before assessing her residual functional capacity. Instead, the assessment of a claimant's residual functional capacity is "based on all the relevant evidence in [the claimant's] case record," and not only on a doctor's opinion. 20 C.F.R. § 404.1545(a)(1); *see Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (noting that the ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of the residual functional capacity). Fundamentally, the ALJ's decision demonstrates that she considered the entire record to formulate the RFC, and she did not abuse her discretion by not sua sponte ordering a consultative examination.

## IV. CONCLUSION

For the reasons stated, the Commissioner's nondisability finding is **AFFIRMED**, and this case is **DISMISSED**.

IT IS SO ORDERED.

Date:  October 24, 2019                                  /s/ Kimberly A. Jolson
                                                                         KIMBERLY A. JOLSON
                                                                         UNITED STATES MAGISTRATE JUDGE